UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSE NOEL MANCIA FLORES,

Petitioner,

v.

MICHAEL BALL, in his official capacity as Acting Deputy Field Office Director of the Buffalo Field Office, Immigration and Customs Enforcement, et al.,

Respondents.

---

**DECISION AND ORDER**

1:26-CV-01970-EAW

Petitioner Jose Noel Mancia Flores ("Petitioner") is a civil immigration detainee alleging that he is being detained in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), pending removal proceedings in violation of the United States Constitution. (Dkt. 1). On September 11, 2026, he filed a petition seeking relief under 28 U.S.C. § 2241. (*Id.*) Petitioner is being held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. (Dkt. 1 at ¶ 1). On September 29, 2026, the Court granted Petitioner's petition (Dkt. 1) to the extent it seeks a bond hearing. (Dkt. 9). On October 5, 2026, a bond hearing was held and bond was denied. (Dkt. 10; Dkt. 13). On October 6, 2026, Petitioner filed a motion to renew his request for immediate release on the grounds that he was arrested without a warrant. (Dkt. 10).

For the reasons set forth below, the Court concludes that on the facts of this case, Respondents' failure to obtain a warrant for Petitioner's arrest justifies immediate release.

**BACKGROUND**

Petitioner is a citizen of El Salvador who entered the United States without inspection on or about November 20, 2021, at or near McAllen, Texas. (Dkt. 1 at ¶ 1). Before his detention, Petitioner resided in Newark, New Jersey, and worked as a construction worker. (*Id.* at ¶ 3). On or about September 2, 2026, ICE took Petitioner into custody at a hotel in Buffalo, New York. (*Id.* at ¶ 4). Petitioner alleges that there is no evidence that there was a change in circumstances or recent developments that led to Petitioner's detention—rather, Petitioner contends that his detention resulted from a warrantless stop. (*Id.* at ¶¶ 8-13).

Petitioner filed his habeas petition on September 11, 2026. (Dkt. 1). On September 14, 2026, the Court entered a Text Order directing Respondents to show cause on or before September 21, 2026, as to why the Court should not grant Petitioner a bond hearing and temporarily restrained Respondents from transferring Petitioner outside this District pending resolution of the petition. (Dkt. 2). Respondents were also directed to provide with their response to the order to show cause a copy of any warrant that Respondents contend was issued and a declaration attesting to when that warrant was issued. (*Id.*). On September 17, 2026, Respondents requested (Dkt. 3) and were granted (Dkt. 4) an extension of time to respond to the September 14, 2026 Text Order.

On September 28, 2026, Respondents filed a response, acknowledging that binding precedent in the Second Circuit requires the Court to grant the petition, while preserving

their arguments that Section 1225(b)(2)(A) applies, and also arguing that the burden of proof at any bond hearing should be on Petitioner. (Dkt. 7 at 1-2).[1] As to Petitioner's arguments regarding his warrantless arrest, Respondents contended that a writ of habeas corpus is not the appropriate vehicle for such claim and urged the Court to deny the claim in its entirety. (*Id.* at 6-7). Respondents also acknowledge that no warrant was served in this case. (*Id.* at 7). Petitioner responded requesting immediate release. (Dkt. 8).

On September 29, 2026, the Court granted the petition to the extent it seeks a bond hearing. (Dkt. 9). On October 5, 2026, a bond hearing was held and bond was denied based on the immigration judge's finding flight risk. (Dkt. 10; Dkt. 13). On October 6, 2026, Petitioner filed the instant motion for immediate release on the grounds that he was arrested without a warrant.[2] (Dkt. 10). Respondents opposed the motion (Dkt. 14) and Petitioner filed a reply (Dkt. 15).

## DISCUSSION

Before July 2025, there would have been no dispute that Petitioner's detention was governed by 8 U.S.C. § 1226(a), under which he would have automatically been entitled to a bond hearing and released if he posed no danger or flight risk. But "in July 2025, the

---

1 To the extent Respondents argued in their response that the Court lacks jurisdiction under 8 U.S.C. § 1252, this Court rejects that argument for the same reasons it has previously done so. *See*, *e.g.*, *Lieogo v. Freden*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *2-3 (W.D.N.Y. Nov. 26, 2025).

2 In Petitioner's reply to Respondents' response to the order to show cause, Petitioner argued that no notice to appear ("NTA") had issued before his arrest and contended that fact provides an independent basis to release Petitioner. (Dkt. 8 at 1). Because Petitioner does not appear to be advancing that argument on the instant motion, the Court need not resolve the question at this time.

government changed that long-settled practice, . . . and began arguing that 8 U.S.C. § 1225(b)(2)(A) prohibits the setting of bond for all inadmissible noncitizens . . . unlawfully present in the United States. . . .” *da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026), *cert. granted*, No. 26-104, 2026 WL 2942994 (U.S. Oct. 1, 2026). This policy directive led to a decision from the Board of Immigration Appeals (“BIA”) on September 5, 2025, in *Matter of Jonathan Javier Yajure Hurtado*, 29 L. & N. Dec. 216 (BIA), 2025 WL 2674169 (Sept. 5, 2025), holding that immigration judges lack authority to hear bond requests of noncitizens present in the United States without inspection and admission because those individuals were classified under 8 U.S.C. § 1225(b)(2) and thus subject to mandatory detention.

On April 28, 2026, the Second Circuit rejected the government’s position, holding in *da Cuhna* that noncitizens present in the United States after entering without inspection and admission and who were not apprehended at or near the border at the time of entry are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), as contended by Respondents, but instead are subject to detention under § 1226(a). Respondents acknowledge that *da Cunha* controls as binding precedent but continue to preserve their arguments that § 1225(b)(2)(A) applies. (*See* Dkt. 7 at 2).

**A. Section 1226(a)**

Section 1226(a) provides that

> *On a warrant issued by the Attorney General*, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
>
> (1) may continue to detain the arrested alien; and

> (2) may release the alien on--
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole; but
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226 (a) (emphasis added). "In short, to arrest and detain a noncitizen lawfully under Section 1226(a), the government must do two things: (1) get a valid warrant . . . and (2) make an individualized custody determination, before or contemporaneous with the arrest, about whether detention is appropriate based on an assessment of danger and flight risk." *Palag Paca v. Maldonado*, No. 26-CV-6598 (AMD), 2026 WL 3362185, at *2 (E.D.N.Y Nov. 5, 2026) (quoting *J.G.G. v. Genalo*, No. 26-CV-5027, 2026 WL 2547110, at *3 (E.D.N.Y. Aug. 28, 2026)).

ICE officers can make warrantless arrests only in limited circumstances:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant--
> . . .
> (2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States. . . .

8 U.S.C. § 1357(a)(2). The relevant implementing regulations at 8 C.F.R. § 287.8(c)(2) confirm that "(i) An arrest shall be made only when the designated immigration officer has

reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States," and "(ii) A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." Accordingly, "based both on the statute and on the regulations, to lawfully arrest a noncitizen who falls under section 1226(a) without a warrant, the arresting official must have reason to believe that the noncitizen is (1) present in the United States illegally and (2) likely to escape before a warrant can be obtained." *Vansh Last Name Unknown v. Ball,* No. 26-CV-1249-LJV, 2026 WL 2096666, at *3 (W.D.N.Y. July 21, 2026); *see also O.R.F. v. Genalo*, No. 26-CV-4883 (BMC), 2026 WL 2935624, at *3 (E.D.N.Y. Sept. 29, 2026) ("As this Court has previously explained, ICE cannot arrest first and justify the arrest with a Form I-200 warrant second. . . . In other words, 'the issue here is not the permissibility of immigration detention, but rather the process required in connection with such detention.'" (quoting *Valdez v. Joyce*, 803 F. Supp. 3d 213, 217 (S.D.N.Y. 2025))); *Vergel Gonzalez v. Rhoney,* No. 9:26-CV-1435 (MAD), 2026 WL 2327690, at *9 (N.D.N.Y. Aug. 12, 2026) ("ICE must obtain a warrant before arresting a noncitizen unless the officer has reason to believe that the [noncitizen] is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." (citation modified)).

**B. Petitioner's Detention**

Here, Respondents concede that no warrant was issued when Petitioner was detained on September 2, 2026, or apparently, at any point after that time. (*See* Dkt. 7 at 7 ("ICE has advised that no warrant was ever served in this case, in apparent violation of 8

U.S.C. § 1226(a) and 8 C.F.R. § 236.1(b)(1). No declaration is being submitted given that no warrant was issued.”)). Because Respondents have not advanced any basis to invoke the applicability of the exception in § 1357(a)(2) for warrantless arrests, the Court concludes that it is inapplicable. But Respondents argue that irrespective of whether they had to obtain a warrant prior to arrest, a writ of habeas corpus is not the proper vehicle to assert such a challenge and the claim should be denied in its entirety. The Court disagrees.

Respondents note that the defects or irregularities in an arrest warrant do not necessarily render an ensuing detention void. *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) (“A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.” (citation modified)). But importantly, here the challenges that Petitioner asserts are not just to the timing or the validity of an arrest warrant but concern the statutory, and not regulatory, requirement that one issue at all.[3] *P.A.G.C.*, 2026 WL 3216694, at *9

---

[3] This context matters. Violations of federal regulations are analyzed under a different standard than statutory violations. *See P.A.G.C.,* 2026 WL 3216694, at *11 (“When a regulation does not affect fundamental rights, the noncitizen must show that the agency’s violation of the regulation prejudiced them. . . . The prejudice rule weighs the benefits of release to the noncitizen against the likely deterrent effects and the administrative cost to agency. . . . This analysis does not apply to a statutory violation.”). In *Rajah v. Mukasey*, 544 F.3d 427, 447 (2d Cir. 2008), the Second Circuit noted that “[g]iven the dimensions of the problems in immigration enforcement, arresting officers cannot be expected even to remember each arrest, much less the precise details of what happened and what was said,” and that it “would enormously decrease the productivity of such officers to require them to compile extensive contemporaneous documentation regarding the details of each investigation and arrest of an alien solely to rebut allegations of technical, non-prejudicial

("Arrest and detention on a defective warrant might be curable, . . . but arrest and detention without statutory authority is not."). In other words, this is not an instance where the procedures were simply not followed to the letter; they were not followed *at all* and no justification has been provided by Respondents for that failure.

Relatedly, while Respondents rely on cases holding that Fourth Amendment challenges to an arrest are improper "as long as Respondents have a lawful basis to detain [petitioner]," (Dkt. 14 at 2 (quoting *Ramirez v. Fields*, No. CV 26-295-DLB, 2026 WL 2446632, at *2 (E.D. Ky. Aug. 20, 2026)), by circumventing the warrant requirements or neglecting to engage in an individualized assessment of the basis for detention, it is unclear how Respondents could have determined whether a lawful basis to detain Petitioner existed or give this Court any assurance that further review regarding Petitioner's arrest is unnecessary. As noted, Respondents do not even attempt to justify their violation of the statutory requirements. Moreover, the Second Circuit has not held that habeas relief is unavailable to petitioners challenging a warrantless arrest and the scores of district court cases in this circuit addressing the merits of such claims reflects an implicit or explicit rejection of this position.

---

regulatory violations made well after their memory of events had faded." The Court concluded that "using termination as a remedy for pre-hearing violations promises a substantial drain on agency resources with little gain in immigrants' significant rights under the regulations." *Id.* Here, Petitioner's argument is not addressed to a non-prejudicial regulatory violation and thus, the discussion in *Rajah* does not direct the outcome here.

Accordingly, having decided that the Court can consider Petitioner's present claims in a habeas proceeding and in light of the fact, as conceded by Respondents, that a statutory violation occurred, the question remains as to the appropriate remedy.

"In the Second Circuit, the balancing test laid out by the Supreme Court in *Mathews v. Eldridge* . . . applies when determining the 'adequacy of process in the context of civil immigration confinement.'" *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *13 (E.D.N.Y. Oct. 6, 2025) (citation omitted). The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As noted by the Supreme Court in *Mathews*, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Court has applied the *Mathews v. Eldridge* factors to Petitioner's situation, notwithstanding that Respondents have not analyzed these factors in their submissions.[4]

---

[4] Other courts have been critical of the government for failing to address the *Mathews* factors in similar contexts. *De La Cruz Vaca v. Venturella*, No. 9:26-cv-2073 (MAD), 2026 WL 3084053, at *3 (N.D.N.Y. Oct. 15, 2026) ("Even if Respondents disagree that the *Mathews* factors should be applied, they are well aware that courts across the country, and this Court in particular, apply those factors in cases such as this. There is no reason provided in the response for why Respondents continue to leave the *Mathews* factors unaddressed.").

As for the first factor, Petitioner's private interest "is the most significant liberty interest there is—the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (quoting *Velasco Lopez*, 978 F.3d at 851). Petitioner's liberty interest is even more heightened because the deprivation of his liberty does not stem from any criminal adjudication. *See Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 599 (W.D.N.Y. 2025) ("[I]t is important to recognize that the deprivation of liberty that individuals detained under section 1226(a) experience is 'not the result of a criminal adjudication.' This, too, heightens [the petitioner's] interest in his liberty." (citation modified)). That Petitioner's detention was without the protections of the required statutory processes makes this factor weigh even more heavily in Petitioner's favor. *See Alvarado Sanchez v. Joyce*, No. 2:26-CV-2285 (NJC), 2026 WL 2836366, at *4 (E.D.N.Y. Sept. 21, 2026) (finding that detention of petitioner "without notice and opportunity to be heard infringes on that liberty interest" and weighs in his favor on the first *Mathews* factor).

Consideration of the second factor leads the Court to the conclusion that "the risk of erroneous deprivation is particularly high here." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 495 (S.D.N.Y. 2025). Petitioner's "'re-detention without' any individualized assessment such as 'any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest,'" *id.* (quoting *Valdez*, 803 F. Supp. at 218), and is magnified by Respondents' detention of Petitioner in violation of the warrant requirements of § 1226(a), *Soares Camargo v. Venturella*, No. 9:26-CV-02128 (BKS), 2026 WL 3306755, at *4 (N.D.N.Y. Nov. 2, 2026) ("Here, as discussed below, the procedures underpinning Petitioner's detention, which are specified in § 1226(a) and its implementing

regulations, do not appear to have been followed, thus increasing the risk of erroneous deprivation." (citation modified)); *Cedeno Carreno v. Bondi*, No. 2:26-CV-1180 (NJC), 2026 WL 2969838, at *5 (E.D.N.Y. Oct. 2, 2026) ("Considering the second factor, the procedures used by ICE give rise to an extraordinarily significant risk of erroneous deprivation of [petitioner's] liberty because they run afoul of both the plain text of Section 1226(a) and its implementing regulations."); *J.G.G.*, 2026 WL 2547110, at *4 ("The second *Mathews* factor — the value of additional safeguards — also favors the petitioner. The procedures defined by Section 1226(a) and the INA's implementing regulations are designed to minimize the risk of an erroneous deprivation. . . . When DHS fails to follow these established and mandatory procedures, it creates a very high risk of an erroneous deprivation of Petitioner's liberty interests." (citation modified)).

As for the third factor, the Court acknowledges that the government's discretion to detain individuals under § 1226(a) "'is valid where it advances a legitimate governmental purpose,' such as 'ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community.'" *Lopez Benitez*, 795 F. Supp. 3d at 495-96. But here, Respondents have not advanced any legitimate government interest in detaining Petitioner without following the statutory requirements of 1226(a) and its implementing regulations. And nothing in the record would justify overriding those requirements or any individualized assessment supporting Petitioner's detention. *Soares Camargo,* 2026 WL 3306755, at *5 ("But absent evidence of an individualized determination regarding Petitioner's dangerousness or flight risk, and absent evidence of any criminal history, danger to the community, or flight risk the Court finds the Government's interest minimal

in this case."); *J.G.G.,* 2026 WL 2547110, at *4 (noting in addressing third *Mathews* factor that "[t]he government does not explain why it did not comply with Section 1226(a), or why the Court should excuse its failure to do so").

The Court concludes that on these facts, to comply with due process, release of Petitioner is justified. The violation of § 1226(a) by Respondents, without even any attempt to cure the omission, justifies this outcome. *Gamez-Quintanilla v. Arteta*, No. 26-CV-6350 (AS), 2026 WL 2517655, at *2 (S.D.N.Y. Aug. 26, 2026) ("Instead, unconditional release is generally granted only where the detention is substantively (not merely procedurally) improper, or where a procedural violation is so egregious, its consequences so grave, and the unlawful restraints already imposed on the petitioner's liberty so lengthy or severe that law and justice mandate unconditional discharge." (citation modified)); *see also Zapata v. Lyons*, No. 9:26-CV-01525 (BKS), 2026 WL 3229717, at *5 (N.D.N.Y. Oct. 28, 2026) ("Thus, the Court finds that because the Government's interest or rationale for detaining Petitioner without an individualized determination at the outset is minimal, and because the Petitioner's interest in his liberty and the risk of erroneous deprivation are great, Petitioner's right to procedural due process was violated and that release is the appropriate remedy in this case."); *Cedeno Carreno*, 2026 WL 2969838, at *9 (concluding that petitioner suffered a due process violation when respondents violated his rights to an individualized inquiry prior to detention and warranted release); *Bernal Morales v. Joyce*, No. 26 CIV. 6723 (PAE), 2026 WL 2445050, at *8 (S.D.N.Y. Aug. 20, 2026) ("Accordingly, as this Court has recognized, where ICE violated [a noncitizen's] due process rights by arresting and detaining him under § 1226 without any exercise of

discretion, an after-the-fact bond hearing by definition, would not and cannot cure that constitutional violation, and immediate release is the appropriate remedy. . . . That principle requires [petitioner's] immediate release. Such release, of course, is without prejudice to ICE's ability to later detain [petitioner], provided it complies with § 1226(a)."); *Vergel Gonzalez v. Rhoney*, No. 9:26-CV-1435 (MAD), 2026 WL 2327690, at *10 (N.D.N.Y. Aug. 12, 2026) (concluding that "Petitioners' detention is unjustified under § 1226's discretionary framework and violative of Petitioners' constitutional rights. . . . Because Respondents have not offered any reason for Petitioners' detention, the Court orders Petitioner's immediate release from custody"); *Vansh*, 2026 WL 2096666, at *4 ("In sum, because ICE did not follow its own regulations and violated the applicable statute when it arrested Vansh, his due process rights were violated, and he is entitled to release without any bond.").[5] The fact that Petitioner was afforded a bond hearing at the Court's direction does not ameliorate the violation. *Inestroza Carbajal v. Frazier*, No. 26-cv-02778, 2026 WL 1309265, at *2 (E.D.N.Y. May 12, 2026) ("Respondents cannot 'cure' their procedural failures . . . by now providing a custody determination[ ] three weeks after arrest.").

---

[5] This decision is limited to the facts herein and is not to say that in some instances, another remedy, such as a bond hearing before an immigration judge, may provide sufficient due process for a warrantless arrest. *See De La Cruz Vaca*, 2026 WL 3084053, at * 5 ("Based on the foregoing, the Court finds that Petitioner has established a due process violation and a prompt bond hearing is warranted. The Government shall bear the burden at that hearing."); *O.R.F. v. Genalo*, No. 26-CV-4883 (BMC), 2026 WL 2935624, at *4 (E.D.N.Y. Sept. 29, 2026) (finding proper remedy for failure to make individualized determination prior to detention was a burden-shifted bond hearing).

Accordingly, for these reasons, the petition is granted to the extent that Petitioner must be immediately released. Respondents are directed to file a status update with the Court confirming his release on or before December 1, 2026.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: November 25, 2026
Rochester, New York